# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER S. ROBERTSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. EDCV 05-00158-JTL<br><br>MEMORANDUM OPINION AND ORDER |

## PROCEEDINGS

On February 24, 2005, Heather S. Robertson ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. On July 26, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on September 26, 2005, defendant filed an Answer to Complaint. On March 29, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On November 13, 2001, plaintiff protectively filed an application for Disability Insurance Benefits. (Administrative Record ["AR"] at 99, 100-02). Plaintiff alleged that beginning on January 1, 2000, she was unable to work because she suffered from asthma, anemia, fibromyalgia, soft tissue arthritis, lymphedema, and weakened immune system. (AR at 109). The Commissioner denied plaintiff's application for benefits both initially and on review. (AR at 64-67, 75-79).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 80). On July 1, 2003, the ALJ conducted a hearing in San Rafael, California. (AR at 19-61). Plaintiff appeared at the hearing with her counsel and testified. (AR at 22-49). Stephen Davis, a vocational expert, also appeared and testified. (AR at 49-60).

On October 9, 2003, the ALJ issued his decision denying benefits. (AR at 13-17). In his decision, the ALJ concluded that plaintiff suffered from severe ankylosing spondylitis with secondary fibromyalgia. But the ALJ found that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 16). Next, the ALJ determined that plaintiff was precluded from lifting or carrying more than twenty pounds occasionally or ten pounds frequently. She was precluded from frequent twisting and bending and was restricted to occasional handling, grasping and fingering. She had mild impairment in attention and concentration. (AR at 16). The ALJ determined that plaintiff was unable to perform her past relevant work but retained the residual functional capacity to perform a reduced range of light work. (Id.). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On December 11, 2003, plaintiff timely filed a request with the Appeals Council for review of the ALJ's decision (AR at 7-9), which the Appeals Council subsequently denied.  (AR at 4-6).

**PLAINTIFF'S CONTENTIONS**

1.   The ALJ failed to consider whether plaintiff could perform sustained work activity given her fatigue and chronic pain, citing SSR 96-8p;

2.   The ALJ's finding that plaintiff could perform the jobs of information clerk, case aide, and food management aide was inconsistent with his own finding that plaintiff had no transferable skills;

3.   The ALJ failed to make a proper credibility finding.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.

3

1  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

2

3                                **DISCUSSION**

4  **A.   THE ALJ'S CREDIBILITY FINDING**

5       Plaintiff contends that the ALJ failed to make any findings in

6  rejecting plaintiff's credibility.   An ALJ need not believe every

7  allegation of disabling pain or other symptoms.   Orteza v. Shalala, 50

8  F.3d 748, 750 (9th Cir. 1995).   But where the ALJ finds a plaintiff's

9  claims of disabling symptoms not entirely credible, he must set forth

10 legally permissible, specific, clear and convincing reasons for doing

11 so.   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).   "The ALJ

12 must specifically identify what testimony is credible and what testimony

13 undermines the claimant's complaints."   Morgan v. Commissioner of the

14 Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999).

15      Unless the evidence suggests affirmatively that plaintiff is

16 malingering, the ALJ must provide clear and convincing reasons for

17 rejecting plaintiff's excessive pain or symptom testimony.   Dodrill, 12

18 F.3d at 918.   The ALJ must make specific findings to support his

19 conclusion that a claimant's complaints of pain or other nonexertional

20 limitations are not credible.   Bunnell v. Sullivan, 947 F.2d 341, 345

21 (9th Cir. 1991)(en banc).

22      Second, an ALJ cannot rely on an absence of disability findings to

23 reject a plaintiff's credibility.   A claimant need not produce evidence

24 of pain other than his own subjective testimony.   Smolen v. Chater, 80

25 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce

26 objective medical evidence of the pain or fatigue itself, or the

27 severity thereof.").   Nor must a claimant present objective medical

28 evidence of a causal relationship between the impairment and the type of

                                    4

symptom.  See id.; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 ( internal quotations omitted).   This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling ("SSR") 96-7p.  Instead, a claimant must demonstrate only two things:  "(1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." Smolen, 80 F.3d at 1282; see also SSR 96-3p.

**1. Discussion of Plaintiff's Credibility**

Plaintiff established that she has a medically determinable impairment capable of causing the symptoms alleged.  The ALJ must, therefore, identify what testimony was not credible and cite clear and convincing reasons for rejecting her allegations.

Plaintiff first contends that the ALJ failed to address in any manner plaintiff's credibility.  Plaintiff states that there was an

5

"unqualified absence" of findings in the ALJ's decision.  In his decision, however, the ALJ specifically found that plaintiff's testimony was "generally credible and supported by the medical evidence but not to the extent she alleged an inability to perform any work."  (AR at 16). Thus, the ALJ addressed the issue of credibility both directly and, as discussed below, indirectly.

### 2.  Factors in Social Security Ruling 96-7p

Plaintiff also claims that the ALJ did not address the factors set forth in SSR 96-7p.  That ruling requires the ALJ to consider the following factors when assessing the credibility of an individual's statements:

1.    The individual's daily activities;

2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

///

### a.   Daily Activities

The ALJ found that plaintiff "described a fairly normal daily routine including driving up to an hour daily, grocery shopping, performing household chores, attending movies, going to the mall and working on her computer. [Plaintiff] travels to visit relatives and has no difficulty walking or keeping her house.  She can perform light gardening."  (AR at 15).

But plaintiff contends that, in fact, she relies on her family and friends for assistance, can only perform light chores, and has had to modify a lot of her activities.   (Joint Stipulation at 27-28). Plaintiff also states that her "yard work" essentially consisted of turning on the hose and checking on her plants. (Joint Stipulation at 32).   Moreover, plaintiff's "traveling" consisted of getting to the administrative hearing and taking a single family trip in which she spent the last four days in the hotel room sick. (Joint Stipulation at 32).

Yet plaintiff indicated at the hearing that she regularly visited her family.  (AR at 39; see also AR at 145).  Plaintiff also admitted that she went to Canada with her mother and stepfather in August 2001. (AR at 39-40; see AR at 246).  And, contrary to plaintiff's assertions of a "single" trip, evidence shows that plaintiff took other trips, including a trip by plane in June 2001, a trip to the Los Angeles area in early 2002, and a return trip to northern California in October 2002. (AR at 199, 208, 323).   On August 31, 2001, plaintiff told her rheumatologist, Jack Waxman, M.D., that she was "not too tired during the day" and would prefer taking a smaller dose of Ambien.  (AR at 330).

Plaintiff also challenges the ALJ's finding concerning her ability to go grocery shopping and perform household chores, which she contends

7

"is a nominal activity done with significant modifications (AR 49)." (Joint Stipulation at 32).   Even if plaintiff's description regarding her activities is accurate, however, the fact that some chores have been modified or that grocery shopping is now "'short and to the point' (AR 41) does not imply a level of inactivity that completely disables plaintiff from working.   Indeed, even when fatigue was "an issue," plaintiff was able to care for her four-year old son and participate in "moderate daily activities."   (AR at 246).

It is true, as plaintiff argues, that plaintiff need not be a "basket case" in order to qualify for benefits.   Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).   Plaintiff's testimony regarding her ability to sustain activity, however, is equivocal.   Where testimony is ambiguous or equivocal, it is for the ALJ to resolve.   Id. at 750 ("The ALJ is likewise responsible for resolving ambiguities").   If the ALJ's interpretation of the evidence is reasonable, as it is here, then it must be upheld.   Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one.   But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it"); Burch v. Barnhart, 400 F.3d 676, 680-681 (9th Cir. 2005), quoting Magallanes, 881 F.2d at 750 ("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'"); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.

1   1989) upholding the ALJ's credibility finding based in part upon Fair's
2   daily activities ("Although Fair asserted that he was 'confined
3   primarily to resting and reclining about his own home,' he testified
4   that 'he remains capable of caring for all his own personal needs, the
5   performance of his own routine household maintenance and shopping
6   chores, riding public transportation, and driving his own
7   automobile.'").

8                   **b.   Other Factors Enumerated in SSR 96-7p**

9        Although the ALJ did not serially discuss each of these factors in
10  his decision, SSR 96-7p does not require that he do so.  It merely sets
11  forth the factors to be considered.  Here, the record implies that the
12  ALJ considered all the factors enumerated in SSR 96-7p.

13       For example, the ALJ noted in his decision that plaintiff alleged
14  chronic pain in multiple parts of her body, with the locations varying
15  daily.  (AR at 14).  The ALJ also found that plaintiff's treatment for
16  her various conditions was conservative.  (AR at 14).  Although this may
17  not be a legitimate reason for discounting the severity of plaintiff's
18  fibroymyalgic pain, where there is no indication that any treatment
19  other than conservative care would provide relief, see Rollins, 261 F.3d
20  at 855 (noting that there is no cure for fibromyalgia), the Court can
21  infer that the ALJ considered plaintiff's treatment.

22       With respect to the side effects of medication, plaintiff cites to
23  her testimony that she is unable to drive because of her sensitivity to
24  pain medication, which makes her sleepy and drowsy.  She also cites her
25  testimony that her medications make her "feel sick" on a daily basis and
26  she has to lie down a couple of times a day for an hour at a time.
27  (Joint Stipulation at 29; AR at 30-31).

28       But the records do not support plaintiff's allegations concerning

the impact of the side effects of medication.  <u>Osenbrock v. Apfel</u>, 240
F.3d 1157, 1164 (9th Cir. 2001)("There were passing mentions of the side
effects of Mr. Osenbrock's medication in some of the medical records,
but there was no evidence of side effects severe enough to interfere
with Osenbrock's ability to work," noting that Osenbrock's most
significant complaints were "dozing off" and "dry mouth").

Plaintiff complained of somnolence from Allegra (AR at 212) and odd
feelings with Imitrex (AR at 238), but she was not taking either of
these medications at the time of the hearing (AR at 30).  Plaintiff also
withstood relatively large doses of ibuprofen without side effects (AR
at 325, 329, 334) until approximately June 2002, at which time she
switched to Bextra (AR at 324).  She complained that Bextra caused her
to lie down in the evening.  (AR at 323).  But plaintiff was still
taking Bextra in April 2003 (AR at 353), and at that time she said she
was doing well with this medication and having no gastric symptoms (AR
at 354).  No other side effects were noted.  Plaintiff also complained
in October 2002, of Lorazepam causing drowsiness, requiring her to lie
down when she took it as a muscle relaxer (AR at 323), but in March 2003
she renewed her prescription as a sleep aid (AR at 354).

Notwithstanding the foregoing, the ALJ did not entirely discount
plaintiff's complaints regarding side effects in his decision.  He found
that plaintiff had mild impairment in her attention and concentration
(AR 15, 16), a limitation to which he apparently attributed plaintiff's
fatigue or side effects of medication.  (AR at 53).

With respect to other measures plaintiff used to get relief,
plaintiff cites to her testimony that she sits in her recliner, elevates
her feet, and wears a compression garment on a daily basis.  (Joint
Stipulation at 29; AR at 27).  Although there is no dispute that

plaintiff has some degree of pain, fatigue, and other symptoms, plaintiff cites to nothing in the record that suggests she needs to recline and elevate her feet.  In fact, the record suggests that there has been improvement in her symptoms and that she has no significant fatigue.  (AR at 331 [July 11, 2001-fair pain relief, good sleep with medication]; AR at 330 [August 31, 2001-sleeping five to six hours but "not too tired during the day"]; AR at 328 [November 8, 2001-conquering problems of poor sleep and stress, and pain complaints improving with fairly limber joints]; AR at 325 [February 21, 2002-pains less impressive on full dose of ibuprofen, low-grade inflammation fairly well controlled]; AR at 323 [October 16, 2002-despite reported poor response to Bextra, the few tender points present were not severe]; AR at 354 [March, 2003-lymphedema is under control, but uses compressive stocking on her upper body and arm on the left side]).

### 3.  Additional Clear and Convincing Reasons

Contrary to plaintiff's assertions of "the unqualified absence of [credibility] findings in the ALJ's decision" (emphasis in original), the ALJ provided other clear and convincing reasons for finding plaintiff's claims of inability to work not entirely credible.  (Joint Stipulation at 27).  This Court may draw specific and legitimate inferences from the ALJ's opinion.  Magallanes, 881 F.2d at 755.

First, the ALJ noted that plaintiff alleged an onset date of January 1, 2000, although the record clearly indicates that plaintiff continued to engage in substantial gainful activity until February 1, 2001.  (AR at 13).  Although it appears that plaintiff never intended to mislead the Commissioner concerning her actual date last worked (AR at 109), on the other hand, alleging an onset date one year before she actually stopped working does not attest to the reliability of

plaintiff's claims of disability when her job required extensive traveling (AR at 24, 110), and she made more in earnings than she had in the previous five years combined (AR at 107).

The ALJ also discussed other physicians' opinions on plaintiff's functional abilities. He cited the assessment of the consultative examiner, Thurman Wheeler, M.D., who opined that plaintiff could perform light work. (AR at 14, 196). Additionally, the ALJ observed that Dr. Waxman, plaintiff's treating physician, never suggested that plaintiff would be unable to work at all. (AR at 14; see AR at 335). The ALJ also observed that plaintiff's current physician stated that he was unable to assess plaintiff's disability. (AR at 14, 357). Generally, an ALJ rely may on a physician's belief that a claimant can perform work to reject the claimant's allegations of disabling pain. See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (affirming ALJ's decision to reject claimant's credibility in part, because physician opined that plaintiff could perform sedentary work); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002)(In assessing a claimant's credibility, the ALJ may consider, inter alia, "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.").

The Court finds that the ALJ's decision to reject plaintiff's claims that she was unable to work was based on clear and convincing reasons.

**B.   THE ALJ'S CONSIDERATION OF PLAINTIFF'S ABILITY TO PERFORM WORK ACTIVITY ON A SUSTAINED BASIS**

Plaintiff cites to SSR 96-8p for the proposition that "[r]egardless of the RFC level, a claimant must be able to function in a work setting 'on a regular and continuing basis,'" which means eight hours a day,

1    five days a week or an equivalent schedule.  (Joint Stipulation at 15).

2    Plaintiff argues that her testimony and the record supports symptoms and

3    limitations "incompatible with the ability to sustain" any work

4    activity.  (Id. at 13).

5    **1.  <u>Subjective Factors</u>**

6         Although plaintiff's subjective complaints suggest that she was

7    unable to sustain work activity, as discussed above, the ALJ properly

8    rejected plaintiff's testimony concerning the severity of her

9    impairment.  (<u>Supra</u>).

10   **2.  <u>Objective Factors</u>**

11        Plaintiff cites to an elevated sedimentation rate, elevated CRP

12   ("C-reactive protein") levels, decreased range of motion, and multiple

13   trigger points in a characteristic fibroymyalgia distribution in support

14   for her claim that her limitations "incompatible with the ability to

15   sustain" any work activity.  (Id. at 16).

16        These objective findings, however, merely establish that plaintiff

17   has a severe impairment.  They do not establish that she has a disabling

18   impairment.  The elevated sedimentation rate had been as high as 67 in

19   1993.  As of May 2001, the sedimentation rate was 47, suggesting low

20   grade inflammation.  (AR at 339; <u>see</u> AR at 333).  But Dr. Waxman found

21   that the etiology of the elevated sedimentation rate was unclear.  (AR

22   at 334).  Physical examinations consistently revealed no synovitis.  (AR

23   at 326-35, 337, 339, 340), and plaintiff was reassured that there was no

24   evidence of connective tissue disease (AR at 340).  The CRP (C-reactive

25   protein) levels also were suggestive of only a "low-grade inflammatory

26   state."  (AR at 326, 333; <u>see also</u> AR at 325, 328, 330).

27        Plaintiff also argues that her "decreased range of motion" is

28   inconsistent with her ability to work at sustained activity.  While

there were isolated instances in which plaintiff had impaired motion (AR at 324, 325), most of her examinations revealed that she had ranges of motion that were slightly decreased or within normal limits. (AR at 196, 256, 329, 331, 333; see also AR at 248).

Dr. Waxman also consistently reported fibromyalgia tender points. Despite plaintiff's testimony of increasingly severe pain (AR at 26), Dr. Waxman reported in October 2002 that she had only a "few tender points" that were "not severe."  (AR at 323).

Thus, while the records support the diagnoses, diagnoses alone do not support a finding of disability.  In sum, plaintiff's condition is not "incompatible with the ability to sustain" any work activity whatsoever.  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)("The mere existence of an impairment is insufficient proof of a disability.").

### 3.   Dr. Waxman's Opinion

Plaintiff argues "that the record does not entirely support the ALJ's conclusion that she can perform light or sedentary work on a regular, sustained basis given her chronic symptoms of pain and fatigue."  (Emphasis added.) (Joint Stipulation at 16).

In finding that plaintiff was capable of sustained work, the ALJ relied in part upon the opinion of plaintiff's treating rheumatologist, Dr. Waxman.  Plaintiff contends that the ALJ "presented evidence that Dr. Waxman believed that [plaintiff] 'should perform light work activities.'" By doing so, plaintiff claims that the ALJ distorted the record.  (Joint Stipulation at 16).  In fact, following an examination of plaintiff, Dr. Waxman did state in his report that "[t]he present work activities may be too stressful for this patient.  We discussed whether this job should be continued or if she should find light work

14

activities.'" (AR at 335).  First, the ALJ did not distort the record.
Plaintiff misstates the nature of the ALJ's reliance on Dr. Waxman's
report.  The ALJ never cited to Dr. Waxman's statement as direct support
for his conclusion that plaintiff could perform light work activities.
(AR at 14; see also AR at 15).  As set forth in his decision, the ALJ
merely reported that "[i]n a February 6, 2001 report, [Dr. Waxman]
opined her present work activities might be too stressful for her.  He
discussed with the claimant whether she should perform lighter work
activities []."  (AR at 14).

Then the ALJ noted that "[a]t no point, did [Dr. Waxman] suggest
that she would be unable to work at all."  (Id.).  The ALJ correctly
cited to the record and drew a reasonable conclusion from it.  The ALJ
was entitled to infer from Dr. Waxman's February 6, 2001, report that
Dr. Waxman did not believe plaintiff to be totally disabled but rather
merely that she might consider leaving the particular job she held at
that time.  (See AR at 335).  See Sample, 694 F.2d at 642 ("In reaching
his findings, the law judge is entitled to draw inferences logically
flowing from the evidence.").

While plaintiff challenges the ALJ's findings and conclusions,
plaintiff offers little evidence in support of her claims that she is
unable to sustain work activity other than the findings of an elevated
sedimentation rate, the etiology and significance of which is unclear
(supra), fibromyalgia tender points, last described by Dr. Waxman as
being few and not severe (AR at 323), and her own symptoms, properly
discounted, which allegedly include complaints of chronic fatigue, poor
sleep, and depression.  (Joint Stipulation at 17).

However, plaintiff's poor sleep was described as being resolved
with Ambien as early as September, 2000.  (AR at 338).  Subsequent

records and her own testimony indicate generally that plaintiff's sleep problems were not significant. (AR at 46-47; <u>see also</u> AR at 216, 326, 327, 330, 331, 333, 337). Plaintiff's depression appears to have been treated with medication, and plaintiff herself does not challenge the ALJ's finding that she has no severe mental impairment. (AR at 15). Plaintiff's complaints of chronic fatigue also are not compelling. (<u>See</u> AR at 179, 220, 339). Thereafter, except for passing references to fatigue (AR at 214, 216), she indicated that "[s]he feels healthy and not overly tired" (AR at 207-08), and that "[s]he is not too tired during the day" (AR at 330; <u>see also</u> AR at 217). Accordingly, contrary to plaintiff's assertions, the record is not "replete with notations" regarding chronic fatigue or poor sleep. (Joint Stipulation at 17.)

Despite plaintiff's charges that the ALJ failed to properly consider her inability to sustain work activity, plaintiff has failed to meet her burden of establishing that such an inability exists. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001)("It was Mayes' duty to prove that she was disabled.").

**C.   <u>VOCATIONAL EVIDENCE</u>**

Once plaintiff has established that she cannot return to her past relevant work, the burden shifts to the Commissioner to show that there is other substantial work that plaintiff can perform. <u>Burch</u>, 400 F.3d at 679. The Commissioner can meet this burden in two ways. The first is by calling upon a vocational expert to testify to what jobs plaintiff can still perform given her residual functional capacity and the availability of such jobs in the national economy. The second way is by relying upon the Medical-Vocational Guidelines ("grids") in Appendix 2, Subpart P, 20 C.F.R. Part 404. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999).

The Grids are "a short-hand method for determining the availability and numbers of suitable jobs for a claimant. . . . The grids categorize jobs by their physical-exertional requirements and consist of three tables," one for sedentary work, one for light, and one for medium. "Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category. . . ." Id.

However, "[w]hen they do not adequately take into account claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." Thomas v. Barnhart, 278 F.3d at 960, citing Moore v. Apfel, 216 F.3d 864, 869-70 (9th Cir. 2000).

Here, because there are nonexertional limitations that would not have been adequately taken into account by the grids, the ALJ properly called upon a vocational expert to testify. The ALJ asked the vocational expert two hypothetical questions.  The first assumed an individual of plaintiff's age, education, and vocational background:

> "at the light level of exertion, and she would be precluded from jobs which require more than rare bending, twisting of the torso.  She should have the opportunity to sit for short periods pretty much at will.  And let's put a limitation of occasional grasping, gripping, or handling and fingering.  Any work which exists in the regional economy and national economy that such a person could perform? ...

1  (AR at 51-52).

2       Based upon this hypothetical question, the vocational expert

3  testified that plaintiff could perform the jobs of information clerk,

4  DOT[1] 237.367-022, case aide, 195.367-010, and food management aide,

5  195.367-022. (AR at 52-53). These jobs all have an SVP[2] of 3-4. (AR

6  at 52-53). The vocational expert also testified that the addition of a

7  mild impairment to attention and concentration as a result of the

8  effects of medication or fatigue resulted in erosion of the available

9  jobs by ten to twenty-five percent. (AR at 53).

10      Relying, purportedly, on the vocational expert's testimony, the ALJ

11  made the following vocational findings:

12      1.   That plaintiff is unable to perform her past relevant

13           work;

14      2.   That she "does not have any acquired work skills that are

15           transferable to the skilled or semiskilled work functions

16           of other work . . .;"

17      3.   That if plaintiff were capable of light work, based upon

18           her age, education and work experience, Medical-

19           Vocational Rule 202.21, Table No. 2, Appendix 2, Subpart

20           P, 20 C.F.R. Part 404, would have directed a conclusion

21           of not disabled;

22

23      [1] Dictionary of Occupational Titles. "The DOT is 'the Secretary's
24  primary source of reliable job information.'" Johnson v. Shalala, 60
    F.3d 1428, 1434 n. 6 (9th Cir. 1995), quoting Terry v. Sullivan, 903
25  F.2d 1273, 1276 (9th Cir. 1980).

26      [2] "The DOT lists a specific vocational preparation (SVP) time for
    each described occupation. Using the skill level definitions in 20 CFR
27  404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2;
    semi-skilled work corresponds to an SVP of 3-4; and skilled work
28  corresponds to an SVP of 5-9 in the DOT." SSR 00-4p.

4.    That although plaintiff's nonexertional limitations do not allow the performance of the full range of light work, using Rule 202.21 as a framework for decision-making and relying upon the vocational expert's testimony, there were jobs existing in significant numbers in the economy which plaintiff could perform. Examples of such jobs are the jobs of information clerk, case aide, and food management aide.  (AR at 15, 16).

Plaintiff contends that the fact that the ALJ found that plaintiff had no transferable skills was inconsistent with the testimony from the vocational expert, who failed to reference any skills that plaintiff acquired from her past work experience.  (Joint Stipulation at 20-21).

Plaintiff further observes that the jobs that the ALJ listed were all semi-skilled.  Therefore, plaintiff contends that "these jobs are inconsistent with the ALJ's own findings." (Id. at 22).

The ALJ's step five finding is not without error.  First, his finding that plaintiff has no transferable skills is arguably wrong. Her past relevant work was at least skilled, with an SVP of 5.  (AR at 51). This does not mean, of course, that plaintiff has transferable skills to jobs within her residual functional capacity, but there is no vocational expert testimony concerning the existence or absence of transferable skills.

Next, assuming that there are no transferable skills, as the ALJ found, plaintiff is correct that she cannot be found to be capable of performing the semi-skilled jobs enumerated by the ALJ.  This is so because an individual who cannot use her skills in other skilled or semi-skilled work is considered to have the same vocational background as someone with an unskilled work background.  Silveira v. Apfel, 204

1  F.3d 1257, 1260-61 (9th Cir. 2000).  And an individual with an unskilled

2  work background does not have the skills to perform semi-skilled work.

3  SSR 82-41 ("Skills are not gained by doing unskilled jobs.").

4       Defendant argues that any error by the ALJ in finding that

5  plaintiff was capable of performing the enumerated semi-skilled light

6  jobs was harmless because the vocational expert also testified that

7  plaintiff could perform the unskilled sedentary job of surveillance

8  system monitor, based upon the ALJ's second hypothetical question:

9            Okay.  Let's erase all of that and go to

10           hypothetical number two.  Sedentary level of

11           exertion, sit stand option, and occasional use of

12           the hands.[3]  Any work which exists in the regional

13           or national economy that such a person could

14           perform?

15  (AR at 53-54).

16       The vocational expert responded that plaintiff could perform the

17  job of surveillance system monitor, DOT 379.367-010, with an SVP of 2,

18  of which there are 125,500 jobs nationally and 7,000 in California.  (AR

19  at 54).  Therefore, considering plaintiff's age and vocational

20  background, even if plaintiff could not perform the semi-skilled jobs

21  enumerated by the ALJ, she still would have been found "not disabled"

22  based upon her ability to perform the unskilled job of surveillance

23  system monitor.  (Joint Stipulation at 23).  Thus, defendant argues that

24  the ALJ's error would not have affected the outcome and is harmless.

25  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 434

26

27       [3] This hypothetical does not include the limitations to jobs which
   require no more than rare bending or twisting of the torso.  However,
28  DOT 379.367-010 does not require such activities.

(9th Cir. 1988) (applying harmless error standard of review to ALJ's decision and refusing to remand where error was harmless); see Shramek v. Apfel, 226 F.3d 809, 814 (7th Cir. 2000)(Even where the ALJ mischaracterized the opinion of the medical expert in his decision, improperly rejected the testimony of the claimant, and improperly discounted the opinion of the treating physician, the matter was affirmed because "[n]one of those errors, however, ultimately impacted the outcome").

Plaintiff counters that reliance upon the testimony of the vocational expert that plaintiff could perform the job of surveillance system monitor "would mean that the Commissioner would ask to [sic] court to accept a different underlying basis to uphold the ALJ's decision." Plaintiff cites Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Connett held that the court is "constrained to review the reasons the ALJ asserts." (Joint Stipulation at 24). Plaintiff's argument is not persuasive.

The ALJ did not find plaintiff disabled because she could perform the jobs of information clerk, case aide, and food management aide. Rather, relying upon the vocational expert's testimony and Rule 202.21 as a framework, he found that plaintiff was not disabled because there was other work that plaintiff could perform, including the jobs he enumerated in his decision. The Court is not required to remand the matter to the ALJ merely to have the ALJ amend his decision to delete

///

///

///

the three semi-skilled jobs and add the job of surveillance system monitor.[4]

## ORDER

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the proper legal standards.   The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 27, 2006

_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[4] Title 42, United States Code, Section 405(g) specifically provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." See Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983)(affirming the district court's modification of the decision of the ALJ, disagreeing with the ALJ's finding that plaintiff was capable of light work but finding instead that Blacknall was not disabled because he remained capable of sedentary work).